UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

KEITH BOWERS,

             Petitioner,

   -vs-

DAVID L. MILLER, Superintendent,
Southport Correctional Facility,

          Respondent.
─────────────────────────────────

**DECISION AND ORDER**

**No. 05-CV-6023L**

## I. Introduction

Petitioner, Keith Bowers ("Bowers") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") challenging his conviction in New York State County Court, Chemung County, on one count of Assault in the Second Degree (New York Penal Law § 120.05(3)). Bowers was convicted by a jury and was sentenced, as a persistent violent felony offender, to a term of twelve years to life. He is presently incarcerated at the Great Meadow Correctional Facility pursuant to this judgment of conviction. For the reasons set forth below, Bowers' § 2254 petition is dismissed.

## II. Factual and Procedural Background

By Chemung County Indictment No. 98-253, Bowers was charged with two counts of Assault in the Second Degree. These charges resulted from an incident that occurred on June 5, 1998, where Bowers allegedly assaulted Correctional Officer ("CO") Richard Augustine and CO Charles Worle, as he was being returned to his

cell in the Southport Correctional Facility located in Pine City, New York.  On October 19, 1998, Bowers was arraigned and pled not guilty to both charges in the indictment.  On October 27, 1998, Bowers moved through counsel to dismiss the indictment claiming that he was not afforded his right to appear and testify before the grand jury.  This motion was granted and the indictment was dismissed with leave to re-file on December 14, 1998.  In a second indictment, No. 98-326, filed on December 18,1998, Bowers was charged with the same charges as in the original indictment. Bowers was arraigned on the charges set forth in the second indictment and pled not guilty on January 7, 1999.  A jury trial commenced on June 15, 1999.

At a jury trial commencing on June 15, 1999 in Chemung County Court (Buckley, J.), Bowers was found guilty of one count of Assault in the Second Degree for the physical injuries inflicted upon CO Richard Augustine.  This charge stemmed from an incident on June 5, 1998 in which, Bowers was being taken to the "day room" for one hour of scheduled recreation when he failed to remain still during a mandatory search and was ordered to be escorted back to his cell.  Bowers was escorted by CO Augustine and CO Martino and further assisted by CO Worle.  At the doorway of Bowers' cell, as the officers were removing Bowers' waist chain, Bowers struck CO Augustine in the head with his handcuffed hands.  As Bowers continued to struggle with the officers, the group fell to the

floor. Once on the floor, CO Augustine and CO Worle were able to secure Bowers' waist chain while CO Martino placed leg irons on Bowers.

As a result of the incident, CO Augustine testified that his left hand was injured and placed in a splint. Tr.[1] at 260. In addition, CO Augustine had a stiff neck for a week, missed one week of work, and was placed on "light duty" for another week. Tr. at 262-63. CO Worle also testified that his right hand was injured in the attack, which caused him to miss one week of work and was placed on light duty for three more weeks. Tr. at 82-4.

The jury returned a verdict convicting Bowers of one count of Assault in the Second Degree for the injuries that Augustine sustained, but acquitted him of the assault count as to Worle. Prior to Bowers' sentencing, Bowers brought a motion to set aside the verdict pursuant to N.Y. C.P.L. § 330.30(1) and (3) and §330.50(1) based on newly discovered evidence because he felt that the verdict was fatally repugnant. However, after holding hearings, Judge Buckley found that the newly discovered evidence, which was testimony from an inmate named William Bonez, was not credible and the verdict was not repugnant. The judge therefore denied both motions to set aside the verdict. Bowers was to be sentenced as a persistent violent felony offender and prior to sentencing sought to challenge the constitutionality of his

---

[1] Citations to "Tr.__" refer to the trial transcript

previous second felony conviction in Wyoming County for Assault in the Second Degree. After holding a hearing, Judge Buckley rejected Bowers' claim and proceeded to sentence him. Bowers was sentenced as a persistent violent felony offender, since he had two prior violent felony convictions within the previous five years, and received a sentence of twelve years to life.

Bowers appealed his conviction to the Appellate Division, Third Department, New York State Supreme Court. On appeal, Bowers' appellate counsel raised nine issues: (1) the prosecution violated New York State's trial readiness statute, and as a result, Bowers was denied his constitutional right to a speedy trial; (2) the evidence was legally insufficient; (3) the verdict was against the weight of the credible evidence; (4) Bowers was denied his constitutional right to effective assistance of counsel; (5) the verdicts were "inconsistent/repugnant;" (6) Bowers was denied his right to a fair trial based on the prosecution withholding a videotape that was potential <u>Brady</u> material; (7) the jury charge was improper; (8) the court erred in denying Bowers' motion for a new trial; and (9) Bowers was improperly adjudicated as a persistent violent felony offender. In addition, Bowers submitted a *pro se* supplemental brief which argued that his trial counsel was ineffective based on his failure to object to the repugnant verdict. The Appellate Division unanimously affirmed his conviction on February 5, 2004. <u>People v. Bowers</u>, 4 A.D.3d 558 (3d

Dept. 2004). The New York Court of Appeals denied leave to appeal on May 28, 2004. People v. Bowers, 2 N.Y.3d 796 (2004). Bowers did not seek a writ of *certiorari* from the United States Supreme Court.

This federal habeas corpus petition followed on January 25, 2005, in which Bowers renewed all but one of the claims that were made on direct appeal.[2]

## III. Discussion

### Exhaustion

Before a federal court may consider an application for habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must have exhausted all the remedies available in the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971); Grey v. Hoke, 933 F.2d 117, 119-21 (2d Cir. 1991). This exhaustion requirement is codified under 28 U.S.C. § 2254(b)(1)(A) and extends to every federal claim asserted by a petitioner. Caballero v. Keane, 42 F.3d 738, 740 (2d Cir. 1994). The exhaustion requirement prohibits a federal court from granting an application for a writ of habeas corpus unless the petitioner has exhausted all of the remedies available in the courts of the state in which he or she was convicted, see 28 U.S.C § 2254(b)(1)(A), although the federal courts now have the discretion to deny a petitioner's unexhausted claims, see 28 U.S.C. § 2254(b). In particular, the exhaustion doctrine "requires . . . that state prisoners give state courts a

---

[2]Bowers did not renew his claim that the verdicts were inconsistent or repugnant.

fair opportunity to act on their claims." <u>O'Sullivan v. Boerckel</u>,
526 U.S. 838 (1999) (citing 28 U.S.C. § 2254(c)) (additional
citations omitted). Thus, a petitioner is not deemed to have
exhausted the available state remedies if he or she has the right
under state law to raise, by any procedure, the federal question
presented in his or her habeas petition. 28 U.S.C. § 2254(c). The
Supreme Court has interpreted this as requiring petitioners to
invoke "one complete round of the State's established appellate
review process," including an application to "a state court of last
resort when that court has discretionary control over its docket."
<u>O'Sullivan</u>, 526 U.S. at 843, 845.

Furthermore, the exhaustion requirement is not satisfied until
the petitioner has "fairly presented" the federal claim to the
highest court of the state. <u>See</u> <u>Picard</u>, 404 U.S. at 275 ("We
emphasize that [for purposes of exhaustion] the federal claim must
be fairly presented to the state courts."). A claim may be "fairly
presented" to the state courts if "the legal basis of the claim
made in state court was the 'substantial equivalent' of that of the
habeas claim." <u>Daye v. Attorney General of State of N.Y.</u>, 696 F.2d
186, 192 (2d Cir. 1982) (quoting <u>Picard</u>, 404 U.S. at 278)
(additional citations omitted). "This means, in essence, that in
state court the nature or presentation of the claim must have been
likely to alert the court to the claim's federal nature." <u>Id.</u> In
addition, a habeas petitioner may "fairly present" his or her

federal claims "even without citing chapter and verse of the Constitution," by the following four methods, first summarized by the Second Circuit in <u>Daye</u>: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. <u>Daye</u>, 696 F.2d at 194.

Respondent acknowledges that Bowers did exhaust four of his eight claims including claims that: (1) he was denied due process via pre-indictment delay,(2) the verdict was not supported by sufficient evidence,(3) he received ineffective counsel, and (4) that the prosecution may have suppressed potentially exculpatory evidence. <u>See</u> Respondent's Answer ("Resp't Ans.") at 11-12. However, Respondent argues that Bowers has not exhausted his claims that: (1) the jury charge was improper, (2) his conviction was against the weight of credible evidence, (3) the court improperly denied Bowers' motion for a new trial, (4) he was denied his statutory right to a speedy trial, (5) he was denied his constitutional right to a speedy trial, and (6) he was wrongly adjudicated as a persistent violent felony offender. <u>See</u> Resp't. Ans. at 11.

With respect to Bowers' claims that his conviction was against the weight of the credible evidence and that his statutory right to a speedy trial was violated, these claims are based on pure state law concerns and therefore are not cognizable for federal habeas review. See 28 U.S.C. § 2254(a).  However, Bowers' four remaining claims in his *pro se* petition can be liberally construed as calling to mind federal constitutional rights.  In these claims, Bowers asserts that (1) his right to due process under the Fourteenth Amendment was violated by the improper jury charge, the (2) denial of his motion for a new trial,(3) his right to speedy trial guaranteed by the Sixth and Fourteenth Amendment was violated, and (4) he was wrongfully adjudicated a persistent violent felony offender, on the basis that he was denied effective assistance of counsel guaranteed by the Sixth Amendment.  Since Bowers' petition does vaguely call to mind federal constitutional issues for these claims, which can be readily disposed of on the merits, it is in the interest of judicial economy that these four remaining claims be considered on the merits.

**Standard of Review**

Because the petition, which was filed on January 25, 2005, postdates the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding.  See Williams v. Taylor, 529 U.S. 362, 402 (2000).  When Congress enacted the AEDPA, it modified  the

role of federal habeas courts in reviewing petitions filed by state prisoners. Id. Thus, a federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That was not the case here. The state court's decision on these claims were properly decided by a reasonable application of federal law. See Williams, 529 U.S. at 404. Accordingly, a federal habeas court is "not empowered to grant the writ when, in its independent judgment, it determines that the state court incorrectly applied the relevant federal law." Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001).

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies. For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits" and (2) reduces its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001); accord, e.g., Ryan v. Miller, 303 F.3d at 246; Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

**Petitioner's State Law Claims**

**A. Bowers' Claim that the Verdict was Against the Weight of the Credible Evidence Does Not Raise a Federal Issue**

To the extent that Bowers claims that his conviction was against the weight of the credible evidence based on C.P.L. § 470.15[3], this claim does not raise an issue that is cognizable on federal habeas review. In addition, Bowers acknowledges and accepts that this issue is barred from federal habeas review. (Petitioner's Traverse ("Traverse") at 4).

A claim that a verdict was against the weight of the evidence is derived from C.P.L. § 470.15(5), a New York State criminal procedure statute. Bowers' weight-of-the-evidence claim therefore is based on a pure state law concern and is not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). In sum, Bowers' claim is not a federal constitutional issue that is cognizable for federal habeas review, and is therefore dismissed from this petition.

---

[3]Under New York law, an appellate court is permitted to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." See N.Y. Crim. Proc. Law § 470.15(5); see also People v. Bleakley, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987).

**B. Bowers' Claim of a Violation of his Statutory Right to a Speedy Trial Does Not Provide a Basis for Federal Habeas Relief**

Bowers contends that his statutory right to a speedy trial was violated, however his basis for this claim relies solely on C.P.L. §30.30, New York's trial readiness statute.[4] Respondent asserts that Bowers' specific claim that his statutory right to a speedy trial was violated is a pure state law claim and is not cognizable on federal habeas review. See Resp't. Ans. at 18. I conclude that this specific claim rests solely on state procedure grounds and is not cognizable on federal habeas review, because in "habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. Accordingly, this claim is dismissed.

**Petitioner's Remaining Claims**

**A. Constitutional Right to a Speedy Trial**

Bowers contends that his constitutional right to a speedy trial was violated because the incident occurred on June 5, 1998, and his trial did not commence until June 15, 1999. See Pet. at 11-12. However, Respondent argues that while eight months did elapse between Bowers' initial indictment on October 9, 1998 until

---

[4]In New York, although C.P.L. §30.30 is referred to as the "speedy trial statute," it actually discusses the prosecution's obligation to announce their trial readiness in a timely fashion. N.Y. CRIM. PROC. LAW § 30.30. Pursuant to the New York State law standard under C.P.L. §30.30, a trial court could find a violation of a defendant's so-called right to a speedy trial to have occurred if the prosecution was not ready for trial within six months of the filing of an accusatory instrument against him. See N.Y. CRIM. PROC. LAW § 30.30(1). In contrast, a defendant could assert his right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution, which would lead the court to analyze the claim under the four-factor balancing test adopted by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972).

the commencement of his trial on the second indictment on June 15, 1999, this delay cannot be shown to have violated Bowers' right to speedy trial. See Resp't. Ans. at 18.

Bowers' trial commenced on June 15, 1999, which was only 5 months and 3 days after his arraignment on the second indictment. Contrary to Bowers' argument, I do not find the delay to have violated his right to speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the Constitution.

The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation existed in cases where a longer period of time has elapsed between indictment and trial than that which is present in Bowers' case. See, e.g., Barker, 407 U.S. at 533-34 (noting that it was "clear that the length of delay between arrest and trial—well over five years—was extraordinary"; however, the fact that the delay caused "minimal" prejudice and the record showed no action "that could be construed as the assertion of the [defendant's] speedy trial right" "outweigh[ed] th[o]se deficiencies"); United States v. Vasquez, 918 F.2d 329, 338 (2d Cir.1990) ("The length of the delay here [26 months] was less extensive than that tolerated in other cases."); Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir.1988) (period of over seven years elapsed between the date that an arrest warrant was issued for appellant and the date on which petitioner was ultimately convicted on the New York murder charge); United States v. McGrath, 622 F.2d 36, 41

(2d Cir.1980) (24 months); <u>United States v. Infanti,</u> 474 F.2d 522, 527 (2d Cir. 1973) ("The length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); <u>United States v. Teyibo</u>, 877 F. Supp. at 858-59 ("[A]n eighteen-month delay is considerably shorter than the delays in other cases in which courts have found no Sixth Amendment violation."); <u>Holmes v. Bartlett</u>, 810 F. Supp. 550, 562 (S.D.N.Y.1993) ("In this case, the length of delay, eighteen months, was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation."). I therefore find that Bowers' pre-trial delay of eight months does not constitute a *per se* violation of his Sixth Amendment right to a speedy trial. Accordingly, the Court's analysis proceeds to consider the remaining three <u>Barker v. Wingo</u> factors.

Moreover, the delay here was not occasioned by the prosector's deliberate attempt to hamper the defense. Different reasons for a delay are afforded different weight, as a "deliberate attempt to delay the trial in order to hamper the defense," <u>Barker</u>, 407 U.S. at 531, would be heavily weighted against the prosecutor. <u>Id.</u> While neither party presents a reason for the delay, the record reveals that during the time between Bowers' indictment and the commencement of his trial, Bowers' counsel made several omnibus motion and requests for discovery. Tr. at 11-13. It is clear that the delay was not the result of any deliberate attempt by the

prosecutor to delay the trial and harm Bowers' defense, but was instead mostly attributable to Bowers' counsel and his motions and requests.

The third factor considers the defendant's responsibility to assert his right to a speedy trial. Barker, 407 U.S. at 531. While Bowers did assert his right to a speedy trial at the commencement of his trial, his basis for the claim was limited to the specifics of New York state law. Tr. at 3. The trial judge reviewed Bowers' motion to dismiss the indictment based on a violation of his right to speedy trial, and he denied the motion as he found it meritless. Tr. at 12-13. Thus, Bowers' assertion of his speedy trial right is accorded strong evidentiary weight, but it is also noted that his motion regarding this right was reviewed and dismissed, as it had little merit. See Barker, 470 U.S. at 531-32.

The final factor is whether prejudice, which results from the delay, injured the defendant. See Barker, 407 U.S. at 532. The Supreme Court focuses on three interests which the Sixth Amendment was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing the accused's anxiety and concern, and (3) limiting the possibility that the defense will be impaired. Id. Of these three interests, Bowers only claims that his defense was impaired by the loss of *potential* exculpatory evidence. Pet. at 20. However, Bowers fails to demonstrate how the loss of a videotape of his transport taken shortly after the incident has

caused prejudice. At the same time the videotape was made, Bowers was photographed and these photographs were turned over to defense counsel, who opted not to introduce them as evidence at the trial. Tr. at 293. Accordingly, upon review of the record, this Court can find no prejudice to petitioner.

In sum, the Court finds that Bowers' Sixth Amendment claim alleging a violation of his right to a speedy trial is dismissed.

## B. Petitioner's Claim that the Pre-indictment Delay led to a violation of Due Process

Bowers contends that the pre-indictment delay of six months and twelve days caused a violation of his right to due process. Pet. at 11-12. While Bowers' petition to this Court fails to address a specific prejudice resulting from this delay, his brief on direct appeal states that this delay caused possible exculpatory evidence to be lost or destroyed. Petitioner's Br. on App. at 5-8 (Exhibit D)(Docket No. 6). On direct appeal, the Appellate Division rejected Bowers' argument that he was prejudiced by this delay and stated:

> We also reject defendant's related claim that preindictment delay deprived him of due process. As this Court has found a preindictment delay of six months and 21 days to be "relatively brief" (People v Staton, 297 AD2d 876, 876-877 [2002], lv denied 99 NY2d 565 [2002]), we do not view the delay of six months and 12 days here to be excessive (see People v Campbell, 306 AD2d 694, 695 [2003], lv denied 100 NY2d 593 [2003] [eight-month delay]; People v Richardson, 298 AD2d 711, 712 [2002] [7 ½ -month delay]). In addition, the People had a reasonable explanation for the delay and defendant failed to demonstrate that the delay impaired his defense (see

People v Diaz, 277 AD2d 723, 724-725 [2000], lv denied 96
　　　　NY2d 758 [2001]).

New York v. Bowers, 4 A.D.3d 558, 559 (2004).  The Appellate

Division's rejection of Bowers' claim based on his failure to

demonstrate actual prejudice caused by the short delay is neither

contrary to, nor an unreasonable determination of, clearly

established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).

　　"[The] Due Process Clause . . . would require dismissal of the

indictment if it were shown at trial that the pre-indictment delay

in this case caused *substantial prejudice* to appellees' rights to

a fair trial and that the delay was an intentional device to gain

tactical advantage over the accused." United States v. Marion, 404

U.S. 307, 324 (1971) (emphasis added).  Further, the Supreme Court

stated that petitioners have limited protection under the Due

Process Clause when claiming that pre-indictment delay was

oppressive, as they must show actual prejudice caused by the delay

and that the delay was unreasonable and unnecessary. United States

v. Lovasco, 431 U.S. 783, 789-90 (1977).  In the present case,

Bowers fails to prove any instance of actual prejudice that

resulted from this delay.  While his brief on direct appeal makes

a vague reference to the loss or destruction of *possible*

exculpatory evidence, he is unable to satisfy the burden that he

was actually or substantially prejudiced by this loss. I therefore

conclude that there is no basis for Bowers' claim that an

approximately six month pre-indictment delay caused a violation of

his Due Process right.  The Appellate Division's decision was neither contrary to, nor an unreasonable determination of, clearly established Supreme Court precedent.  Accordingly, Bowers' claim is dismissed.

## C. The Petitioner was Not Deprived of the Right to a Fair Trial

Bowers contends that the prosecutor violated its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), by withholding a videotape that showed Bowers as he was moved to a new cell after the incident. Pet. at 17-21.  Bowers believes that this videotape contained potentially exculpatory evidence.  Pet. at 20.

On direct appeal, the Appellate Division rejected Bowers' argument that the prosecution's failure to disclose the videotape amounted to a  Brady violation by stating:

> Also unavailing is defendant's argument that a Brady violation occurred when the People failed to disclose a videotape re-cording showing his appearance shortly after the incident. There *560  is no evidence to indicate that the videotape, which had been in the possession of the Department of Correctional Services until it was inadvertently erased and only came to the prosecution's attention shortly before trial, was ever in the possession or control of the People (see People v Santorelli, 95 NY2d 412, 421 [2000]; People v Ross, 282 AD2d 929, 930-931 [2001], lv denied 96 NY2d 907 [2001]). Moreover, since defendant did not attempt to introduce into evidence photographs of him taken after the incident, we are not persuaded that the results at trial would have been different if the videotape-which also recorded his appearance only after the incident-had been available to him to show his injuries. Thus, we find no error in County Court's exercise of its discretion in denying a mistrial on this ground.

Bowers, 4 A.D.3d at 559-60. The Appellate Division's rejection of Bowers' Brady claim is neither contrary to, nor an unreasonable determination of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).

Pursuant to AEDPA, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication on the merits of his federal constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000). In the present case, the clearly established precedent is Brady v. Maryland, 373 U.S. 83 (1963), where the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87; see also United States v. Agurs, 427 U.S. 97, 110 (1976) ("there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request").

The Appellate Division's decision is in accordance with the standard set forth in Brady, as Bowers failed to provide any evidence that would prove the three necessary components to constitute a Brady violation. First, Bowers presented no evidence that indicates that the videotape was favorable to his defense. The sole focus of his argument is on the correctional facility's failure to follow proper procedure to preserve potential evidence. Pet. at 17. At no point does Bowers address how the videotape, which only documents his transfer from the shower to a new cell after the incident occurred, would support his claim that he was the victim of an assault. In addition, the trial court ruled that the tape was never in the People's possession and therefore they could not have suppressed the videotape. Tr. at 342. This ruling was based on the testimony at trial which revealed that the tape was in the possession of the Department of Correctional Services until it was inadvertently erased and the People never had possession of the videotape. Tr. at 342. Lastly, Bowers cannot establish that this evidence was material or that he was prejudiced by the prosecutor's failure to disclose this videotape. Bowers contends that the videotape would have shown the injuries he sustained as a result of the incident, but he fails to establish how this would have proved his innocence. Moreover, he did have access to photographs that depicted his injuries around the same time the videotape was made and he did not introduce these at trial

as evidence.  Tr. at 293.   Bowers has not presented any evidence

that this videotape was material or caused Bowers to be prejudiced.

Thus, he fails to establish any of the three components necessary

to constitute a true <u>Brady</u> violation. <u>See</u> <u>Strickler</u>, 527 U.S. at

281-282.

    In  sum,  the  decisions  of  the  state  trial  court  and  the

Appellate   Division   were   not   contrary   to,   or   objectively

unreasonable  applications  of,  the  law  clearly  established  by  the

Supreme  Court  in  <u>Brady</u>  and  its  progeny  and  thus  there  is  no  basis

for  relief  under  28  U.S.C.  § 2254(d)(1).   <u>See</u> <u>Williams</u>, 529 U.S.

362,  405-406;  <u>Francis S. v. Stone</u>,  221  F.3d  100,  111  (2d  Cir.

2000).

## D. The Trial Jury Did Not Receive an Improper or Erroneous Jury Charge

    Bowers contends that the trial court's charge to the jury was

erroneous  and  improper  because  it  deviated  from  his  counsel's

proposed additional language, which was accepted by the prosecutor

and the court. Pet. at 13-14.  The additional language was included

after  Bowers'  counsel  requested  that  the  charge  contain  an

instruction  to  the  jury  that  "assaulting  an  inmate  is  not  within"

a  correctional  officer's  lawful  duties.  Tr.  at  539.   During  the

pre-charge conference, the agreed upon instruction provided:

> I charge you that the unjustifiable striking of an inmate
> would not be in the performance of a lawful duty, if you
> find that the injuries to Officers Augustine and/or Worle
> were  caused  by  the  unjustifiable  striking  of  Inmate
> Bowers, namely, if either of the two officers were to

have unjustly struck the inmate, their injury, if caused
by that unjustifiable striking' would not be performance
of a lawful duty.

Tr. at 550. During the actual charge to the jury, the judge

correctly instructed the jury on the three elements necessary to

find Bowers guilty of Assault in the Second Degree for both counts.

Tr. at 620-22. In addition, the judge did include the additional

instruction that:

> I charge you that an unjustifiable striking of an inmate
> would not be in the performance of a lawful duty, if you
> find that the injuries to Officers Augustine and/or Worle
> were caused by their unjustifiable striking of Inmate
> Bowers.

Tr. at 622. On direct appeal, the Appellate Division rejected

Bowers' contention that the court's failure to precisely state the

additional language in its charge to the jury was an error.

Bowers, 4 A.D.3d at 560. The Appellate Division stated:

> Although the actual instruction to the jury was different
> than the wording discussed at the charge conference, the
> variation was so insignificant that defendant made no
> objection to it (see People v Douglas, 296 AD2d 656, 657
> [2002], lv denied 99 NY2d 535 [2002]). Also, we find that
> County Court did not abuse its discretion by refusing to
> repeat the supplemental instruction when the jury asked
> to be instructed again as to the elements of the crime of
> assault in the second degree.

Id. The Appellate Division's rejection of Bowers' erroneous jury

charge claim is neither contrary to, nor an unreasonable

determination of, clearly established Supreme Court precedent. See

28 U.S.C. § 2254(d)(1).

In order to obtain relief under 28 U.S.C. § 2254 based on an alleged error in the trial court's instruction to the jury, the petitioner must establish that the error violated a right guaranteed by federal constitutional law. <u>Cupp v. Naughten</u>, 414 U.S. 141 (1973), <u>Casillas v. Scully</u>, 769 F.2d 60, 63 (2d Cir. 1985). Thus, a challenge which merely claims that instruction was "undesirable, erroneous, or even universally condemned" is not sufficient. <u>Cupp</u>, 414 U.S. at 147. Instead, the petitioner for habeas relief must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." <u>Id.</u>,<u>accord</u> <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977).

In his traverse, Bowers argued that the jury instruction violated his Fourteenth Amendment right to due process as it confused the jury, which he assumed based on the jury's request to be re-charged on the elements of the crime. Traverse at 20-21. However, his argument does not claim that the jury charge was an inaccurate statement of law, instead Bowers' contention is that since the trial court deviated from the accepted language in the pre-charge conference, it constituted error.

While Bowers asserts that the actual instruction was undesirable for his defense, he provides no evidence showing that the instruction so infected the trial that his due process was violated. Bowers' argument fails as a matter of law since a

defendant does not "have the right 'to dictate the precise language of a jury instruction.'" <u>United States v. Yousef</u>, 327 F.3d 56, 159 (2d Cir. 2003), <u>cert. denied</u>, 540 U.S. 933 (2003) (quoting <u>United States v. Imran</u>, 964 F.2d 1313, 1317 (2d Cir.1992)).  Since the judge accurately instructed the jury on the three elements required to prove the crime of Assault in the Second Degree and included the essence of Bowers' counsel's requested additional instruction explaining that unjustifiable striking of an inmate is not within the lawful duty of a correctional officer, it cannot be said that the jury charge was erroneous.  Tr. at 620- 622.  Moreover, Bowers' claim that he was unjustifiably struck by the correctional officers is not supported by any evidence, therefore an error in the charge would not have a "substantial and injurious effect or influence in determining the jury's verdict," and the court's instruction did not result in any "actual prejudice" to Bowers. <u>Brecht v. Abrahmson</u>, 507 U.S. 619, 637-38 (1993)(internal quotation marks omitted).  Accordingly, this claim is dismissed.

**E. The Petitioner Did Not Receive Ineffective Assistance of Counsel**

Bowers contends that he was denied his constitutional right to effective counsel based on his attorney's failure to make multiple motions during the trial.  Pet. at 22.  On direct appeal, the Appellate Division found this claim to be meritless. <u>Bowers</u>, 4 A.D.3d at 561.  This decision was neither contrary to, nor an

unreasonable determination of, clearly established Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1) and (2).

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense.  The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution."  Strickland v. Washington, 466 U.S. 668, 685 (1984).

> The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.  An accused is entitled to be assisted by an attorney . . . who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that "the right to counsel is the right to effective assistance of counsel."

Id., 466 U.S. at 685-686, (quoting McCann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  Whether a criminal defendant's representation is constitutionally inadequate is a mixed question of law and fact. Cuyler v. Sullivan, 446 U.S. 335, 342 (1980).  The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance."  Strickland, 466 U.S. at 687.

To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient."  Id. Generally, deficiencies in counsel's performance do not warrant setting aside the judgment in a criminal proceeding, unless they

are prejudicial to the defense. To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[] all the circumstances," must make "every effort ... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." Id. 695-696. Therefore, the Court considers these errors in the aggregate. See Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001) (citing, inter alia, Moore v. Johnson, 194 F.3d 586, 619 (5th Cir. 1999) (holding that court should examine cumulative effect of errors committed by counsel across both the trial and sentencing)). If an attorney's error has no effect on the judgment, it is not a denial of effective assistance of counsel, and hence not a violation of the Sixth Amendment. Strickland, 446 U.S. at 691.

Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome

... would have been different[.]" <u>McKee v. United States</u>, 167 F.3d
103, 106 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 688). "A
reasonable probability is a probability sufficient to undermine
confidence in the [trial's] outcome," <u>Strickland</u>, 466 U.S. at 688;
a defendant "need not show that counsel's deficient conduct more
likely than not altered the outcome of the case." <u>Id.</u> at 693.
Thus, even serious errors by defense counsel do not warrant
granting federal habeas relief where the conviction is supported by
overwhelming evidence of guilt.

The Court has examined the record thoroughly to assess the
effectiveness of petitioner's attorney, and finds that his
attorney's conduct was well within the wide range of reasonable
professional assistance. Bowers' counsel made a sound opening
statement, where he laid out the theme of Bowers' defense, in which
he alleged that Bowers had not beaten the officers but they had
initiated the attack. Tr. at 53-56. In addition, counsel
conducted meaningful cross-examination, made appropriate
objections, undermined witness' credibility, moved for dismissal of
the case at the end of the People's case and after both sides had
rested, actively participated in the pre-charge conference, gave an
effective summation, and argued against Bowers being sentenced as
a persistent violent felony offender. Given the overwhelming
evidence of petitioner's guilt, including the testimony of five
correctional officers present during the incident and the medical

records of CO Augustine's injury, there is no reasonable probability that, but for the alleged deficiencies, the outcome would have been different. Habeas relief will not be granted on this claim in the petition.

## F. Petitioner was Not Convicted on Insufficient Evidence

Although Bowers' claim that the verdict was against the weight of the evidence does not raise a federal issue, his claim that his conviction was based on insufficient evidence does assert a federal constitutional issue. The Appellate Division rejected his claim of insufficient evidence as not persuasive. The Appellate Division's adjudication was neither contrary to, nor an unreasonable determination of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1) and (2).

Bowers alleges that the proof adduced at trial was insufficient as a matter of law to convict him of Assault in the Second Degree. See N.Y. C.P.L. § 120.05(3). New York Penal Law sets forth, in relevant part, the following elements for C.P.L. § 120.05(3): "a person is guilty of assault in the second degree when[,] with intent to prevent a peace officer . . . from performing a lawful duty...he causes physical injury to such peace officer." Bowers asserts that the evidence is insufficient because it fails to show that Officer Augustine and Officer Worle were performing or attempting to perform a lawful duty and that his

intention was to prevent them from performing such a duty. Pet. at 26-27.

When reviewing a claim that there was insufficient evidence to support a conviction, this Court, viewing the evidence in the light most favorable to the prosecution, must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998); Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994). In considering the sufficiency of a state law conviction, this Court "must look to state law to determine the elements of the crime," Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted); accord Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), and consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law," Einaugler v. Supreme Court of State of N.Y., 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted). The evidence must be viewed in the light most favorable to the prosecution, and all permissible inferences must be construed in the state's favor. E.g., United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993); accord Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir.) (court must "credit every inference that could have been drawn in the State's favor, . . .

whether the evidence being reviewed is direct or circumstantial")
(citations omitted), <u>cert. denied</u>, 488 U.S. 929 (1988).

Under Penal Law § 120.05(3), a person is guilty of Assault in
the Second Degree when that person, with the intent to prevent a
peace officer from performing a lawful duty, causes physical injury
to the peace officer. <u>See</u> N.Y. C.P.L. § 120.05(3). Respondent
argues that, viewing the evidence in the light most favorable to
the prosecution, the evidence and reasonable inferences to be drawn
from that evidence permitted the jury to rationally conclude that
Bowers intended to prevent the correctional officers from
performing their lawful duties, and that he engaged in conduct that
otherwise satisfied Penal Law § 120.05(3).

The prosecution introduced evidence, via testimony from
correctional officers present during the incident, which
established that while the correctional officers were placing
Bowers back into his cell he struck CO Augustine in the head and
began to struggle with the other COs. Tr. 65-77, 140-148, 242-49.
Furthermore, CO Augustine testified regarding the extent of his
injuries, which included a painful injury to his thumb that caused
him to be treated at the hospital. Tr. at 256-64.

Viewing the evidence in a light most favorable to the
prosecution, I find that a rational trier of fact based on the jury
instruction received as to the essential elements of the crime of
Assault in the Second Degree could have found Bowers guilty beyond

a reasonable doubt. The record indicates that the correctional officers were performing a lawful duty, as they were returning Bowers to his cell after he had been ordered back to his cell for failure to comply with directions during his recreational hour. Tr. at 241. In addition, a number of officers testified that Bowers struck CO Augustine as they attempted to place him in the cell. Tr. at 71-72 144, 247. Moreover, there is no evidence beyond Bowers' own testimony that would indicate that he did not initiate the attack.

Since this Court gives deference to the jury's assessment of witness credibility, I find that there was sufficient evidence for a rational trier of fact to conclude that Bowers did commit Assault in the Second Degree. Jackson, 443 U.S. at 319. I therefore dismiss this claim.

## G. Denial of Motion for a New Trial was Proper

Bowers claims that the trial court erred by not granting his request for a new trial in light of newly discovered evidence in the form of the testimony by a fellow inmate, William Bonez, who stated that the complaining corrections officer, CO Augustine, told him that he would have him (Bonez) indicted on false charges in the same way he had done with Bowers. For instance, Bonez testified at the C.P.L. § 330.30[5] hearing that CO Augustine said to him, "Bonez,

---

[5] Under New York law, a motion to set aside a verdict may be granted, in the trial court's discretion, if the defense can establish that newly discovered evidence (1) will probably change the result if a new trial is ordered; (2) is discovered since the conclusion of the trial; (3) is such that it would not have been discovered prior to trial by the

I'm going to get your ass the same way I got Bowers. All I got to do is bump my head or scratch my hand and have your black ass indicted like I did Bowers and then take a few days off with pay." <u>See</u> C.P.L. 330.30 Order at 1-2.

The trial court denied the motion, finding that it should "afford[]s very little credibility" to Bonez, "who obviously has an agenda" and "has made it his avocation while imprisoned to challenged the system by filing grievances." <u>Id.</u> at 4. The trial court completely rejected Bonez's testimony concerning the content of CO Augustine's comments, finding that crucial portions of it were "incredible of belief." <u>Id.</u> Apart from lacking credibility, Bonez's testimony was also found to be "merely impeaching or contradictory to former evidence and as such [was] alone not acceptable" to support a motion for a new trial under C.P.L. § 330.30. <u>See</u> C.P.L. 330.30 Order at 5 (citing <u>People v. Bugman</u>, 254 A.D.2d 796 (4th Dept. 1998), <u>appeal denied</u>, 92 N.Y.2d 980 (N.Y. 1998). On direct appeal, the Appellate Division rejected Bowers' claim of newly discovered evidence as follows:

> Nor can we agree that County Court erred in denying defendant's CPL 330.30 motion for a new trial based upon newly discovered evidence. In order to prevail upon such a motion, it must appear that the newly discovered evidence would not merely impeach or contradict the proof at trial (see People v. Salemi, 309 N.Y. 208, 215-216, 128 N.E.2d 377 [1955], cert. denied 350 U.S. 950, 76

---

exercise of due diligence; (4) is material to the issue resolved at trial; (5) is not cumulative to the issue; and (6) must not be merely impeaching or contradicting of the evidence presented at trial. <u>See</u> N.Y. Crim. Proc. Law § 330.30; <u>see also</u> <u>People v. Salemi</u>, 309 N.Y. 208, 215-16 (N.Y. 1955), <u>cert.</u> <u>denied</u>, 350 U.S. 950 (1956).

S.Ct. 325, 100 L.Ed. 827 [1956]; People v. Mack, 301
A.D.2d 863, 864-865, 755 N.Y.S.2d 437 [2003], lv. denied
100 N.Y.2d 540, 763 N.Y.S.2d 6, 793 N.E.2d 420 [2003] ).
Here, the new evidence was the often conflicting
testimony of another prison inmate who alleged that
Augustine had made statements indicating that the charges
against defendant were fabricated. After a hearing,
County Court found that this evidence, even if it were to
be believed, would merely tend to impeach Augustine's
testimony. On the record before us, we cannot say that
County Court abused its discretion in denying defendant's
motion (see People v. Wood, 94 A.D.2d 849, 850, 463
N.Y.S.2d 604 [1983] ).

Bowers, 4 A.D.3d 558, 560. The state courts' rejection of Bowers'

newly discovered evidence claim is neither contrary to, nor an

unreasonable determination of, clearly established Supreme Court

precedent. See 28 U.S.C. § 2254(d)(1).

"[N]ewly discovered evidence only warrants habeas relief where

it bears on 'the constitutionality of the applicant's detention;

the existence merely of newly discovered evidence relevant to the

guilt of a state petitioner is not a ground for relief on federal

habeas corpus.'" Mapp v. Clement, 451 F.Supp. 505, 511

(S.D.N.Y.1978) (quoting Townsend v. Sain, 372 U.S. 293, 317 (1963),

overruled on other grounds, Keeney v. Tamayo-Reyes, 504 U.S. 1

(1992)), aff'd without op. 591 F.2d 1330 (2d Cir.1978), cert.

denied, 440 U.S. 948, 99 S.Ct. 1428 (1979); accord Herrera v.

Collins, 506 U.S. 390 (1993). The Supreme Court reiterated in

Herrera that "[c]laims of actual innocence based on newly

discovered evidence have never been held to state a ground for

federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal proceeding."
Herrera, 506 U.S. at 400. Herrera emphasized that the due process
clause guarantees only that a trial is procedurally fair, and not
that the verdict is factually correct. Id. at 401-02. Assuming for
the sake of argument that a claim of actual innocence based on
newly discovered evidence is even cognizable on federal habeas
review, a petitioner must, as an initial matter, demonstrate some
kind of underlying constitutional injury. Laurey v. Graham, 596
F.Supp.2d 743, 763 (W.D.N.Y. 2009) (citing United States ex rel.
Scarincio v. Coughlin, 657 F.Supp. 433, 436 (S.D.N.Y.1987) (holding
that a petitioner seeking habeas relief based on alleged "newly
discovered evidence" "must show that the exculpatory evidence was
suppressed through prosecutorial misconduct depriving him of his
right to a fair trial.") (citing Welcome v. Vincent, 418 F.Supp.
1088, 1093 (S.D.N.Y.1976), rev'd on other grounds, 549 F.2d 853
(2d Cir.), cert. denied, 432 U.S. 911 (1977)). Construing Bowers'
*pro se* pleadings to suggest the strongest argument possible, the
Court will assume that the constitutional injury that Bowers is
alleging consists of CO Augustine perjured himself at trial.

The Supreme Court has consistently held that a conviction
obtained by the knowing use of perjured testimony is fundamentally
unfair, and must be set aside if there is any reasonable likelihood
that the false testimony could have affected the judgment of the
jury. Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009) (quoting

Agurs, 427 U.S. at 103 (footnote omitted in original). "[W]hen the newly discovered evidence focuses on the perjury of a witness, a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury." United States v. White, 972 F.2d 16 (2d Cir. 1992) (citation omitted).

Here, however, Bowers has not demonstrated that perjury even occurred, much less that the prosecution knew about it.  The only testimony offered that would support Bowers' contention that CO Augustine committed perjury was from fellow inmate Bonez, whose testimony was found to not be credible by the trial court.  This Court, sitting in habeas review, has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  Here, the record, which was made following an evidentiary hearing, amply supports the trial court's findings that Bonez was not a credible witness. The state court's findings regarding Bonez's credibility were neither unreasonable in light of the evidence presented, 28 U.S.C. § 2254(d)(2), nor have they been rebutted by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1).  Furthermore, the trial court held that even if Bonez were believed, his testimony was merely impeaching or contradictory to the testimony offered at trial by the complaining witness, CO Augustine.  Significantly, "[p]erjury is *not* demonstrated by showing that testimony of a witness is inconsistent with the

-34-

statements of another witness." <u>United States v. Schlesinger</u>, 438 F. Supp.2d 76, 106 (E.D.N.Y. 2006) (emphasis added) (citing <u>Gallego</u>, 191 F.3d at 162; <u>United States v. Gambino</u>, 59 F.3d 353, 365 (2d Cir.1995)). I therefore find no basis to conclude that the alleged new evidence offered by Bowers sufficiently demonstrates that an underlying constitutional violation (i.e., perjury by a prosecution witness) occurred at his trial. As <u>Herrera</u> explains, there is no clearly established Supreme Court precedent holding that absent a constitutional violation independent of the newly discovered evidence, a claim of newly discovered evidence presents a cognizable basis for habeas relief. As such, the state courts' refusal to grant a new trial based upon their rejection of Bowers' claim of newly discovered evidence is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Accordingly, it is dismissed.

## H. Petitioner was Not Improperly Adjudicated as a Persistent Violent Felony Offender

Bowers contends that the trial court erred when it sentenced him as a persistent violent felony offender. Pet. at 15. Bowers argues that his prior conviction in 1997[6], for which he was sentenced as a predicate violent felony offender was unconstitutional because he had ineffective counsel, who failed to

---

[6]On October 2, 1997, Bowers was convicted of Assault in the Second Degree in Wyoming County, New York. Sentencing Hearing ("S."). at 17.

attack the constitutionality of his 1995 conviction[7].  <u>Id.</u>
Concerning his 1995 conviction,  Bowers alleges that he was
promised youthful offender status when he pled guilty, however,
during his sentencing in the present case, it was made clear that
this status was never granted. S. at 13. On direct appeal in the
present case at issue here, Bowers contended that his 1997
conviction was unconstitutional because his counsel was ineffective
in attacking the constitutionality of his 1995 conviction.   The
Appellate Division rejected Bowers' claim that he was improperly
sentenced as a persistent violent felony offender as meritless.
<u>Bowers</u>, 4 A.D.3d at 561.   The Appellate Division's  rejection of
Bowers'  sentencing  claim  is  neither  contrary  to,  nor  an
unreasonable determination of, clearly established Supreme Court
precedent. <u>See</u> 28 U.S.C. § 2254(d)(1).

        In <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394
(2001), the Supreme Court held that:

> once a state conviction is no longer open to direct or
> collateral attack in its own right . . .  the conviction
> may be regarded as conclusively valid. . . . If that
> conviction is later used to enhance a criminal sentence,
> the defendant generally may not challenge the enhanced
> sentence through a petition under § 2254 on the ground
> that  the  prior  conviction  was  unconstitutionally
> obtained.

<u>Id.</u> at 403-04.  The Supreme Court provides a sole exception to the
general rule stated above when a  petitioner challenges an enhanced

---

[7]On February 1, 1995, Bowers pled guilty to Robbery in the First Degree in Queens County, New York. S. at 9.

sentence on the grounds that the prior conviction used to enhance the sentence was obtained "where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in <u>Gideon v. Wainwright</u>, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)." <u>Id.</u> (noting that the "special status of <u>Gideon</u> claims in this context is well established" in its case law) (citing <u>Custis v. United States</u>, 511 U.S. 485, 496-497 (1994) (The "failure to appoint counsel for an indigent [is] a unique constitutional defect . . . ris[ing] to the level of a jurisdictional defect," which therefore warrants special treatment among alleged constitutional violations.")' <u>United States v. Tucker</u>, 404 U.S. 443, 449 (1971); <u>Burgett v. Texas</u>, 389 U.S. 109, 115 (1967)). Thus, "[w]hen an otherwise qualified § 2254 petitioner can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, the current sentence cannot stand and habeas relief is appropriate." <u>Id.</u> at 405 (citing <u>Tucker</u>, 404 U.S. at 449 (affirming vacatur of sentence that was based in part on prior uncounselled state convictions).

Thus, it is clear that the Supreme Court has sharply distinguished between collateral attacks to previous convictions used for enhancing a sentence between those based on the actual failure to appoint counsel and those based on other possible trial defects, including the denial of the effective assistance of

-37-

counsel. <u>Daniels v. United States</u>, 532 U.S. 374, 376 (2001) ("[W]ith the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to bring such a challenge in his federal sentencing proceedings.") (citing <u>Custis</u>, 511 U.S. at 487) (granting *certiorari* to determine whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence under the Armed Career Criminal Act on the basis that they were the product of allegedly faulty guilty pleas and ineffective assistance of counsel; holding that a defendant has no such right unless he is asserting that his conviction was obtained in violation of the <u>Gideon</u> right to appointed counsel). The Supreme Court has reiterated that challenges based on ineffective counsel do not rise to the level of a constitutional defect that would permit a collateral attack on a prior conviction. <u>Coss</u>, 532 U.S. at 404 (citing <u>Daniels</u>, 532 U.S. at 378) (citation omitted).

Bowers has not challenged the 1997 conviction on the basis that there was a complete failure to appoint defense counsel. Instead, Bowers argues that his 1997 conviction was unconstitutional because the counsel who was appointed to represent him did not provide the "effective assistance" to which he was entitled under the Sixth Amendment because, in effect, his trial counsel allegedly did not object to the use of a prior conviction

in 1995, which was used to enhance his 1997 sentence as a predicate violent felony offender, as being unconstitutional. Because Bowers is not claiming, and indeed cannot claim, that there was a failure to appoint counsel, he cannot invoke the <u>Gideon v. Wainwright</u> exception which would permit him to collaterally attack a prior conviction underlying a sentence enhancement. Therefore, Bowers is precluded from challenging the 1997 conviction on federal habeas review on the basis that it was unconstitutional and should not have been used to enhance his sentence for his 1999 conviction. <u>Accord</u> <u>Bellamy v. Fischer</u>, 2006 WL 2051038, *6 (S.D.N.Y. July 24, 2006) ("While Bellamy's 1990 Conviction clearly was used to enhance his sentence under his 1995 Conviction, Bellamy has not raised a challenge to the 1990 Conviction based on failure to appoint counsel. Rather, he challenges his conviction based on ineffective assistance of counsel. Hence, the exception to the bar on collaterally attacking a conviction underlying a sentence enhancement does not apply, and Bellamy cannot challenge the 1990 Conviction on grounds that it was unconstitutional and should not therefore be used to enhance his sentence under the 1995 Conviction."). Accordingly, Bowers' sentencing claim is dismissed.

## CONCLUSION

For the reasons stated above, Respondent's motion to dismiss the petition is granted and Keith Bowers' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed. Because

Petitioner Bowers has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253.

      ALL OF THE ABOVE IS SO ORDERED.

<u>   s/Michael A. Telesca   </u><br>
MICHAEL A. TELESCA<br>
United States District Judge

DATED:    Rochester, New York<br>
            July 10, 2009